STATE OF NORTH CAROLINA
v.
JAMES ALLEN CRUSE
No. COA08-1133
Court of Appeals of North Carolina
Filed July 21, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Douglas W. Corkhill, for the State.
William D. Auman for Defendant-Appellant.
McGEE, Judge.
Defendant was indicted for robbery with a dangerous weapon, attempted first-degree murder, and assault with a deadly weapon with intent to kill inflicting serious bodily injury on 4 December 2006. Defendant was found guilty of robbery with a firearm under the theory of aiding and abetting on 25 February 2008. The trial court sentenced Defendant to a term of sixty-four to eighty-six months in prison. Defendant appeals.
The State's evidence at trial tended to show that Defendant was a close friend of his co-defendant, Joshua Devon Carter (Carter), who testified that he had dated, and later moved in with, Defendant's sister. Carter, as a condition of his plea agreement, testified that on 20 July 2006, the day of the robbery, he and Defendant had smoked some "exotic weed" together. Carter further testified that he and Defendant then discussed robbing the convenience store at issue in this case.
Defendant and Carter drove to a Wal-Mart in Carter's mother's car, where they purchased two orange masks and stole two pairs of gloves. After driving past the convenience store multiple times, once stopping so that Defendant could go in and buy a soda, Defendant and Carter returned to the store to commit the robbery. Wearing the masks and gloves, Defendant and Carter parked the car and walked from behind the building to the front door and entered.
Upon entering the store, Carter shot the clerk and began removing money from the cash register. Carter testified that the shooting was accidental and that he was on an adrenaline rush. The clerk survived his wounds. While Carter removed the money from the cash register, Defendant stood at the counter with his hands out saying "give me the money, give me the money." Photographs taken from the convenience store surveillance video showed Defendant and Carter in the convenience store during the robbery.
Defendant and Carter were stopped by police a few days later and taken to the police station for questioning. While being questioned separately, Carter made a full confession of the robbery, but Defendant made an initial statement that he knew nothing of the robbery. Upon a second interview with police, Defendant stated that his involvement with the robbery resulted from fear that Carter would hurt Defendant if he did not cooperate.
At trial, Defendant testified that Carter formulated the idea for the robbery, and that Defendant protested the idea. Defendant went on to say that Carter forced him to participate by threatening him at gunpoint. Defendant also testified that after being taken to the police station, the detective informed him that he was not under arrest, but he could not leave the station until he gave a statement. Defendant made his initial statement before being informed of his rights as required by Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694 (1966).
Kara Tucker (Tucker), Defendant's ex-girlfriend, testified that Defendant called her on the day of the robbery, and that he was emotional and fearful that someone was going to kill him. Tucker also stated that the line went dead after about a minute into the conversation.

I.
In Defendant's first and second arguments, he contends the trial court committed plain error by allowing testimony of Defendant's past drug use and Defendant's initial statement to police as substantive evidence. We disagree.
Defendant failed to object at trial to the testimony that is the basis of his first two arguments. However, Defendant argues the contested testimony was improperly admitted, and that the admission of this testimony constituted plain error. As stated in State v. Davis, ___ N.C. App. ___, 664 S.E.2d 21 (2008):
In order to establish plain error "[d]efendant must show that the error was so fundamental that it had a probable impact on the result reached by the jury." State v. Campbell, 340 N.C. 612, 640, 460 S.E.2d 144, 159 (1995) (citation omitted). "Plain error is error `so fundamental as to amount to a miscarriage of justice or probably resulted in the jury reaching a different verdict than it otherwise would have reached.'" State v. Hannah, 149 N.C. App. 713, 720, 563 S.E.2d 1, 6 (2002) (quotation omitted). Plain error review is limited to evidentiary rulings and jury instructions. State v. Atkins, 349 N.C. 62, 81, 505 S.E.2d 97, 109-10 (1998).
Id. at ___, 664 S.E.2d at 23. It is Defendant's "burden in plain error analysis to prove that the jury `probably would have reached a different verdict' absent the error." State v. Bellamy, 172 N.C. App. 649, 664, 617 S.E.2d 81, 92 (2005) (citations omitted).
Defendant first argues that testimony concerning his prior drug use constituted plain error. Assuming arguendo that the trial court erred in admitting the contested testimony as evidence, we hold the admission of this testimony does not rise to the level of plain error. The evidence Defendant assigns as plain error includes testimony that Defendant first met Carter at a store that sold drug paraphernalia, where Defendant asked about buying "some weed." The testimony also included a drug deal involving Defendant's friend and testimony that Defendant possessed "blunts," cigars filled with marijuana. While Defendant did assign as plain error the testimony that he and Carter purchased and smoked marijuana after the robbery, he failed to assign as plain error testimony that he and Carter purchased and used marijuana before the robbery. Because Defendant does not contest additional evidence of his drug use admitted at trial, any prejudice caused by the admission of the contested evidence of his drug use is greatly diminished.
Furthermore, there was plenary evidence admitted at trial to support the jury's verdict. State's evidence tended to show that Defendant and Carter knew each other. They obtained orange masks and gloves from a Wal-Mart prior to the robbery, and surveillance footage from the convenience store showed Carter at the register with Defendant holding his hands out on the opposite side of the counter. This evidence could tend to bolster Carter's testimony that Defendant was telling Carter "give me the money, give me the money" as the robbery took place. Carter testified that Defendant was involved in the robbery, and Defendant admitted his participation in the robbery to the police, though Defendant argued that his participation was not voluntary. Carter also testified that he and Defendant split the money obtained during the robbery between themselves equally. Evidence of Defendant working with Carter to obtain masks and gloves, surveillance footage of Defendant and Carter at the scene of the crime, the equal division of the proceeds, Defendant's own statement confessing to his involvement in the robbery, and sworn testimony from Carter incriminating Defendant, all provided substantial evidence of Defendant's guilt. When we weigh the testimony of prior drug use against the evidence presented at trial of Defendant's guilt, we cannot hold that the prejudicial effect of the disputed testimony was enough to have "`tilted the scales' and cause[d] the jury to reach its verdict convicting the defendant." Bellamy, 172 N.C. App. at 662, 617 S.E.2d at 91 (quoting State v. Walker, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)). Therefore, even assuming that allowing the drug use testimony amounted to error, it did not rise to the level of plain error. This argument is without merit.
Defendant next argues that the trial court committed plain error by admitting a statement he made to Officer Hatcher after he had been taken to the police station, but before his rights had been read to him as required by Miranda. Miranda, 384 U.S. 436, 16 L. Ed. 2d 694. Again, assuming arguendo that allowing the initial statement constituted error, we hold that admission of this testimony does not rise to the level of plain error. Defendant stated that he had been at the convenience store on the night of the robbery only to buy a soda, signed a corresponding statement, and made no mention of his involvement with the robbery. Shortly after making this statement, Defendant informed police of his involvement, but claimed he participated in the robbery only out of fear that Carter would harm him if he did not cooperate.
Defendant again fails to prove that the admission of the contested evidence probably changed the verdict at trial. While the admission of the statement might have negatively impacted Defendant's credibility with the jury, as he later changed his statement, in light of the plenary evidence of Defendant's guilt, we do not believe Defendant has carried his burden of proving that, absent the contested statement, the outcome at trial probably would have been different. Davis, ___ N.C. App. at ___, 664 S.E.2d at 23.
Finally, as stated previously, to constitute plain error it is Defendant's burden to prove that the error probably changed the verdict reached by the jury. Bellamy, 17 N.C. App. at 664, 617 S.E.2d at 92. In Defendant's brief, he argues that absent admission of the challenged evidence, "[the jury] may well have reached a different result." Even were we to agree with Defendant that the jury "may well have reached a different result," we would still hold no plain error, as this standard is insufficient to prove plain error. Defendant is obligated to show that "absent the error, the jury probably would have reached a different verdict[.]" State v. King, 342 N.C. 357, 365, 464 S.E.2d 288, 293 (1995). Defendant has failed to properly argue plain error because Defendant failed to argue in his brief that had any of the contested evidence been excluded, it would probably have resulted in the jury reaching a different verdict.
"[A] defendant's empty assertion of plain error, without supporting argument or analysis of prejudicial impact, does not meet the spirit or intent of the plain error rule. By simply relying on the use of the words `plain error' as the extent of his argument. . . [the] defendant has effectively failed to argue plain error and has thereby waived appellate review."
State v. Verrier, 173 N.C. App. 123, 128, 617 S.E.2d 675, 679 (2005) (quoting State v. Cummings, 352 N.C. 600, 636-37, 536 S.E.2d 36, 61 (2000) (cert. denied, 532 U.S. 997, 149 L. Ed. 2d 641 (2001)). These arguments are without merit.

II.
In Defendant's third and fourth arguments he contends the trial court committed error by instructing the jury on the theory of aiding and abetting armed robbery and instructing the jury on the "friend" exception to the mere presence rule. We disagree.
Defendant objected at trial to the jury instructions that are the subject of his third and fourth arguments.
This Court reviews jury instructions "contextually and in [their] entirety. The charge will be held to be sufficient if `it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed . . . .' The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by [the] instruction. 'Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.'"
State v. Blizzard, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (internal citations omitted).
Defendant argues the trial court erred by instructing the jury on the theory of aiding and abetting armed robbery. It is well-established in North Carolina that
a jury instruction on aiding and abetting is supported by sufficient evidence if there is evidence that "(i) the crime was committed by some other person; (ii) the defendant knowingly advised, instigated, encouraged, procured, or aided the other person to commit that crime; and (iii) the defendant's actions or statements caused or contributed to the commission of the crime by that other person."
State v. Young, ___ N.C. App. ___, ___, 675 S.E.2d 704, 707 (2009) (quoting State v. Goode, 350 N.C. 247, 260, 512 S.E.2d 414, 422 (1999)). Also, mere presence at the crime scene is not sufficient; "to be guilty [a defendant] must aid or actively encourage the person committing the crime or in some way communicate to this person [the defendant's] intention to assist in its commission." Goode, 350 N.C. at 260, 512 S.E.2d at 422. This communication "does not have to be shown by express words of the defendant but may be inferred from his actions and from his relation to the actual perpetrators." Id.
The State's evidence tended to show that Defendant aided Carter in the armed robbery. Carter admitted to his involvement in the robbery and shooting, evidence that "the crime was committed by some other person[,]" the first element in aiding and abetting. Young, ___ N.C. App. at ___, 675 S.E.2d at 707. There is evidence that Defendant helped to procure the masks and gloves he and Carter wore at the convenience store. Carter's testimony claimed that it was Defendant who formulated the idea to rob the store and that Defendant already possessed plans describing how to execute the robbery. Surveillance footage shows Defendant standing at the counter with his hands out while Carter is at the cash register, supporting Carter's testimony that Defendant told Carter to "give me the money, give me the money." Although he claims that he was under duress, Defendant has acknowledged that he had some involvement in the robbery. From this evidence, the jury could find that Defendant "knowingly . . . aided [Carter] to commit [the] crime; and . . . [Defendant's] actions . . . caused or contributed to the commission of the crime by" Carter. Young, ___ N.C. App. at ___, 675 S.E.2d at 707. Based on the evidence presented by the State, the trial court did not commit error by instructing the jury on aiding and abetting armed robbery, as there was sufficient evidence for each of the three elements stated in Young. Because there was sufficient evidence for each element, nothing in the instruction served to "mislead the jury." Blizzard, 169 N.C. App. at 296-97, 610 S.E.2d at 253. This argument is without merit.
Defendant next argues that the trial court erred by instructing the jury on the "friend" exception to the mere presence rule. Footnote 3, section 202.20 of the Pattern Jury Instructions states that when there is evidence that the "defendant was present at the scene of the crime . . . when the bystander is a friend of the perpetrator and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as an encouragement, and . . . this was aiding and abetting." N.C.P.I. Crim. 202.20 (internal citations omitted). Our appellate courts have supported this reasoning. Regarding aiding and abetting, as stated in Goode, "when the bystander is a friend of the perpetrator and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as an encouragement." Goode, 350 N.C. at 260, 512 S.E.2d at 422.
The State's evidence tended to show that Defendant was present during the commission of the crime and that he and Carter were friends at the time of the robbery. Despite Defendant's claim of acting under duress, Carter testified that he and Defendant were friends and Defendant chose to participate in the robbery by his own accord. The surveillance footage also shows Defendant at the scene of the crime with his hands out, saying "give me the money, give me the money[,]" as Carter was emptying the register. Because the State provided sufficient evidence to constitute instruction of the "friend" exception, we cannot hold that Defendant has carried his burden to show that "the jury was misled or that the verdict was affected by [the] instruction." Blizzard, 160 N.C. App. at 296-97, 610 S.E.2d at 253. This argument is without merit.

III.
In Defendant's final argument, he contends the trial court committed error by denying his motion to dismiss the aiding and abetting armed robbery charge. We disagree.
Defendant made a motion to dismiss the aiding and abetting armed robbery charge at trial, arguing that the State presented insufficient evidence.
A defendant's motion to dismiss should be denied if there is substantial evidence: (1) of each essential element of the offense charged and (2) of defendant's being the perpetrator of the offense. Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion. On review of a denial of a motion to dismiss, the appellate court must view the evidence in the light most favorable to the State, giving it the benefit of all reasonable inferences.
State v. Smith, ___ N.C. App. ___, ___, 669 S.E.2d 8, 11 (2008) (citing State v. Scott, 356 N.C. 591, 595-97, 573 S.E.2d 866, 868-69 (2002)).
The State's evidence addressed each element of aiding and abetting stated in Young. Carter's testimony incriminating Defendant, evidence showing Defendant helped obtain the masks and gloves used at the convenience store, testimony that Defendant and Carter divided the money from the robbery equally, and photographs from the store surveillance footage showing Defendant and Carter at the scene of the crime, taken in the light most favorable to the State, all supported submitting the issue of aiding and abetting to the jury. While Defendant submitted evidence attempting to show he acted under duress, which conflicted with the State's evidence, "contradictions and discrepancies are for the jury to resolve and do not warrant dismissal[.]" State v. Powell, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). We hold that the State presented "relevant evidence" at trial that could "persuade a rational juror to accept a conclusion" that Defendant was guilty. Smith, ___ N.C. App. at ___, 669 S.E.2d at 11. This argument is without merit.
No error.
Judges GEER and BEASLEY concur.
Report per Rule 30(e).