DAVIS, Judge.
 

 *94
 
 In this appeal, we address the question of when charges of statutory rape and sexual exploitation are properly submitted to a jury. Ronald T. Corbett ("Defendant") appeals from his convictions for statutory rape of a person who is 13, 14, or 15 years old, first-degree sexual exploitation of a minor, second-degree sexual exploitation of a minor, and five counts of taking indecent liberties with a child. Because we hold that the evidence - when viewed in the light most favorable to the State - was sufficient for a reasonable juror to have found Defendant guilty of these charges, we conclude that he received a fair trial free from error.
 

 Factual and Procedural Background
 

 The State introduced evidence at trial tending to establish the following facts: "Amy"
 
 [1]
 
 was born in October 2001 in Toledo, Ohio to Defendant and Simone Hamilton. Amy lived with her mother and younger brother in Ohio until she was nine years old when the family moved to Raleigh. At that time, Defendant was living in Nebraska.
 

 During the 2013-14 school year when Amy was in the sixth grade, Defendant moved to Fayetteville to live with his mother. Following Defendant's move to North Carolina, Amy began staying at his residence on weekends. During the summer of 2014, Defendant began living with Hamilton and her children in their apartment.
 

 Within a month after moving into the apartment, Defendant became verbally and physically abusive toward Hamilton. He also sexually assaulted her on multiple occasions by forcing her to have sexual intercourse with him and to perform oral sex on him. In addition, Defendant began disciplining Amy by beating her. These punishments occurred
 
 *877
 
 frequently in response to "[a]nything little" such as when Amy "forgot something at school or didn't take a shower." Defendant also forced Amy to read and memorize passages from the Bible and punished her if she did not remember everything she had read.
 

 On several occasions during 2014, Defendant took Amy into his room while Hamilton was at work and ordered her to remove her clothes. The first time this occurred, Amy initially refused to remove her clothing but ultimately acceded to Defendant's demand because she was scared he would hurt her if she refused. After taking off her clothes, Amy stood in front of Defendant for approximately an hour reading the Bible and listening to him read the Bible to her. During this incident, Defendant was
 
 *95
 
 wearing only a towel. Although Amy did not actually observe Defendant photographing her on this occasion, she identified at trial a photograph introduced into evidence by the State showing her standing naked in her father's room that was taken on that same day.
 

 On multiple occasions that year, Defendant took Amy into his bedroom and forced her to rub Vaseline on his penis. The first time this occurred, Amy did not understand what Defendant wanted her to do and he "kept explaining it over and over" and "ended up ... saying it step-by-step." Defendant threatened Amy by telling her that if she did not "do this now something else will happen. I'll do something harder. I'll do something worse." He also told Amy that if she wanted a boyfriend she would "have to learn how to please him."
 

 During one such instance, Defendant became upset with Amy because she was not "doing it correctly." He pushed her down onto his bed and got on top of her, which resulted in Vaseline getting onto Amy's pants. Defendant then ordered Amy to take her pants off and began touching her and "telling [her] to stop covering [herself]." He also tried "to put his penis inside [Amy] but [she] screamed loud and he got up because he wanted [her] to be quiet."
 

 On another occasion, Defendant told Amy that he would return a cell phone that he had confiscated from her if she opened her legs for him. Amy was naked at the time. When she refused, he "grabbed [her] legs open" and "tried to touch [her] vagina." Although Defendant was able to touch Amy between her labia, he was unable to "get much further" because Amy continued to push his hand away.
 

 On 27 July 2014, Defendant asked Amy to bring him lotion that he had previously purchased for her. Upon learning that Amy had left the lotion at school, Defendant became very upset. He told Amy to go to her room and began physically abusing Hamilton. Because she was upset that Defendant was hitting her mother, Amy ran out the front door and went to the apartment complex's leasing office. Defendant attempted to chase Amy but eventually gave up. Amy called the police from the leasing office, and law enforcement officers subsequently arrived at the apartment complex and arrested Defendant.
 

 Defendant was indicted by a Wake County grand jury for statutory rape of a person who is 13, 14, or 15 years old, first-degree sexual exploitation of a minor, second-degree sexual exploitation of a minor, and five counts of taking indecent liberties with a child. On 17 September 2014, Defendant's counsel filed a motion to have him examined for the purpose of determining his capacity to stand trial. Following an examination
 
 *96
 
 by the medical staff of the Forensic Services Unit of Central Regional Hospital, Defendant was found to be competent. After requesting leave to proceed
 
 pro se
 
 at trial, Defendant was allowed to represent himself. On 15 January 2015, an order was entered appointing standby counsel for Defendant.
 

 A jury trial was held beginning on 8 May 2017 before the Honorable Reuben F. Young. Amy, her mother, and several law enforcement officers testified for the State. Defendant did not present any evidence. At the close of the State's evidence, Defendant's standby counsel moved to dismiss both sexual exploitation charges and the statutory rape charge based on insufficiency of the evidence.
 

 *878
 
 The trial court denied these motions. Defendant renewed his motions to dismiss at the close of all the evidence and the trial court once again denied them.
 

 On 11 May 2017, the jury convicted Defendant of all charges. The trial court sentenced him to consecutive terms of 16-29 months imprisonment for each charge of taking indecent liberties, 73-148 months for the first-degree sexual exploitation charge, 25-90 months for the second-degree exploitation charge, and 240-348 months for the charge of statutory rape. Defendant gave timely notice of appeal to this Court.
 

 Analysis
 

 On appeal, Defendant argues that the trial court erred by denying his motions to dismiss, contending that (1) no evidence of penetration was presented to support the statutory rape charge; and (2) the photograph upon which the sexual exploitation charges were based did not depict Amy engaged in "sexual activity" as that term is defined in the North Carolina General Statutes. We address each argument in turn.
 

 I. Statutory Rape
 

 Defendant first argues that the trial court erred by failing to dismiss the statutory rape charge because the State presented no evidence of penetration constituting a "sexual act" under
 
 N.C. Gen. Stat. § 14-27.1
 
 . We disagree.
 

 "A trial court's denial of a defendant's motion to dismiss is reviewed
 
 de novo
 
 ."
 
 State v. Watkins
 
 ,
 
 247 N.C. App. 391
 
 , 394,
 
 785 S.E.2d 175
 
 , 177 (citation omitted),
 
 disc. review denied
 
 ,
 
 369 N.C. 40
 
 ,
 
 792 S.E.2d 508
 
 (2016). On appeal, this Court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator[.]"
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (citation omitted),
 
 cert. denied
 
 ,
 
 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d 150
 
 (2000).
 

 *97
 
 Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980). Evidence must be viewed in the light most favorable to the State with every reasonable inference drawn in the State's favor.
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied
 
 ,
 
 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995). "Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal."
 
 Smith
 
 ,
 
 300 N.C. at 78
 
 ,
 
 265 S.E.2d at 169
 
 .
 

 Defendant was indicted for statutory rape pursuant to
 
 N.C. Gen. Stat. § 14-27
 
 .7A(a)
 
 [2]
 
 , which provides that a defendant "is guilty of a Class B1 felony if the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person[.]"
 
 N.C. Gen. Stat. § 14-27
 
 .7A(a) (2014). For purposes of
 
 N.C. Gen. Stat. § 14-27
 
 .7A(a), the term " '[s]exual act' means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body[.]"
 
 N.C. Gen. Stat. § 14-27.1
 
 (2014). Our appellate courts have held that for purposes of rape offenses, "evidence that the defendant entered the labia is sufficient to prove the element of penetration."
 
 State v. Bellamy
 
 ,
 
 172 N.C. App. 649
 
 , 658,
 
 617 S.E.2d 81
 
 , 88 (2005) (citation omitted),
 
 appeal dismissed and disc. review denied
 
 ,
 
 360 N.C. 290
 
 ,
 
 628 S.E.2d 384
 
 (2006).
 

 In
 
 Bellamy
 
 , the defendant was convicted of first-degree sexual offense.
 
 Id.
 
 at 657,
 
 617 S.E.2d at 88
 
 . At trial, evidence was presented that the defendant "used the barrel of his gun to separate [the victim's] labia."
 

 Id.
 

 During her testimony, the victim "clarified that she felt the barrel of the gun on the
 
 inside
 
 of
 
 *879
 
 her labia."
 

 Id.
 

 On appeal, the defendant argued that insufficient evidence of penetration was presented to support the submission of the first-degree sexual offense charge to the jury. This Court held that the trial court properly denied the defendant's motion to dismiss where "all of the evidence ... shows that Bellamy used the barrel of his gun to spread the labia of [the victim]."
 
 Id.
 
 at 658,
 
 617 S.E.2d at 88
 
 .
 

 In the present case, the following exchange occurred at trial between the prosecutor and Amy on direct examination:
 

 *98
 
 [PROSECUTOR]: And can you tell us the areas that [Defendant] would touch you?
 

 [AMY]: My vaginal area.
 

 ....
 

 [PROSECUTOR]: And so what did he physically do?
 

 [AMY]: He, like, grabbed my legs open.
 

 [PROSECUTOR]: And what did he do?
 

 [AMY]: He tried to touch my vagina.
 

 [PROSECUTOR]: Do you recall what you were wearing?
 

 [AMY]: I think I was wearing no clothes.
 

 [PROSECUTOR]: And what was he able to touch?
 

 [AMY]: Just the outside and he tried to get in, but I kept hitting him.
 

 [PROSECUTOR]: I hate to talk about anatomy, but you sort of have the outside labia part, was he able to touch the skin there?
 

 [AMY]: Yes.
 

 [PROSECUTOR] And how would you [be] able to get him away?
 

 [AMY]: He's stronger than me. Just, he eventually stopped because I guess he got tired.
 

 ....
 

 [PROSECUTOR]:
 
 How far would you say he was able to get with -- did he actually go between your labia? Do you understand my question?
 

 [AMY]:
 
 Yes.
 

 [PROSECUTOR]:
 
 Was he able to do that?
 

 [AMY]:
 
 Yes.
 

 (Emphasis added.)
 

 Citing
 
 Bellamy
 
 , Defendant contends that Amy's testimony that he touched her "between" her labia does not constitute sufficient evidence
 
 *99
 
 of penetration. This is so, he asserts, because " 'between' the labia does not equate to 'inside' the labia" for purposes of penetration pursuant to
 
 N.C. Gen. Stat. § 14-27
 
 .7A. We disagree.
 

 In the above-quoted exchange, Amy testified that Defendant touched her in her "vaginal area." She stated that he "grabbed [her] legs open" and "tried to touch [her] vagina[.]" In addition, she expressly testified that Defendant
 
 was
 
 able to touch her "between" her labia before giving up after Amy repeatedly pushed him away.
 

 Viewing Amy's testimony in the light most favorable to the State - as we must - we are satisfied that reasonable jurors could have concluded that the State presented sufficient evidence that Defendant penetrated Amy's labia. Therefore, we hold that the trial court properly denied Defendant's motion to dismiss the statutory rape charge.
 
 See
 

 State v. Kitchengs
 
 ,
 
 183 N.C. App. 369
 
 , 376,
 
 645 S.E.2d 166
 
 , 171-72 ("[W]e cannot conclude ... that the State failed to meet its burden of showing substantial evidence of penetration. Thus, the trial court did not err in denying Defendant's motions to dismiss [his statutory rape charge]."),
 
 disc. review denied
 
 ,
 
 361 N.C. 572
 
 ,
 
 651 S.E.2d 370
 
 (2007).
 

 II. Sexual Exploitation
 

 Defendant next argues that the trial court erred by denying his motion to dismiss the first-degree and second-degree sexual exploitation charges because the photograph submitted into evidence by the State that formed the basis for those charges did not depict Amy engaged in "sexual activity" as defined by the North Carolina General Statutes. Specifically, he contends that (1) the
 
 *880
 
 photograph was not "lascivious"; and (2) it did not include the exhibition of Amy's genitals or pubic area.
 

 N.C. Gen. Stat. § 14-190.16
 
 provides, in pertinent part, as follows:
 

 A person commits the offense of first degree sexual exploitation of a minor if, knowing the character or content of the material or performance, he ... [u]ses, employs, induces, coerces, encourages, or facilitates a minor to engage in or assist others to engage in
 
 sexual activity
 
 for a live performance or for the purpose of producing material that contains a visual representation depicting this activity[.]
 

 N.C. Gen. Stat. § 14-190.16
 
 (a) (2017) (emphasis added).
 

 Second-degree sexual exploitation of a minor criminalizes, among other things, the act of "photograph[ing] ... or duplicat[ing] material that contains a visual representation of a minor engaged in sexual activity[.]"
 

 *100
 

 N.C. Gen. Stat. § 14-190.17
 
 (2017). The definition of "sexual activity" for purposes of both first-degree and second-degree sexual exploitation of a minor includes "[t]he lascivious exhibition of the genitals or pubic area[.]"
 
 N.C. Gen. Stat. § 14-190.13
 
 (g) (2017). This prong of the definition of "sexual activity" was the theory on which the State proceeded at trial for purposes of the sexual exploitation charges.
 

 Our appellate courts have defined the term "lascivious" as "tending to arouse sexual desire."
 
 State v. Hammett
 
 ,
 
 182 N.C. App. 316
 
 , 322,
 
 642 S.E.2d 454
 
 , 458 (citation and quotation marks omitted),
 
 appeal dismissed and disc. review denied
 
 ,
 
 361 N.C. 572
 
 ,
 
 651 S.E.2d 227
 
 (2007). In
 
 Hammett
 
 , the defendant was convicted of taking indecent liberties with a child pursuant to
 
 N.C. Gen. Stat. § 14-202.1
 
 for conduct that included "french kissing" his minor daughter.
 

 Id.
 

 at 323
 
 ,
 
 642 S.E.2d at 458
 
 . This Court concluded that the defendant's actions were lascivious for purposes of the statute because "the jury could find that defendant's actions ... tended to arouse sexual desire in defendant."
 
 Id.
 
 at 322-23,
 
 642 S.E.2d at 459
 
 .
 

 Here, the photograph forming the basis for Defendant's convictions for sexual exploitation of a minor depicts Amy standing naked in her father's bedroom except for her socks. Her arms are crossed in front of her body, and she is attempting to cover her pubic area with her hands.
 

 A reasonable jury could have found that this photograph meets the definition of "lascivious." The focal point of the picture is Amy's naked body. She is standing in her father's bedroom, a setting generally associated with sexual activity. She is fully nude except for her socks. Furthermore, the photograph is clearly intended to elicit a sexual response based upon the context in which it was taken, which included Defendant's repeated attempts to touch Amy sexually.
 

 Finally, we address Defendant's contention that the photograph does not actually contain an exhibition of Amy's genitals or pubic area. He argues that "[w]hile Amy is unclothed, her arms are crossed in front of her body and her hands block any view of her genital area."
 

 Although it is true that Amy's hands are positioned over her genitalia in the photograph, the fingers of her left hand are spread far enough apart that clearly visible gaps exist between them such that her pubic area is at least partially visible. Viewing the evidence in the light most favorable to the State, reasonable jurors could have determined that the photograph at issue depicted Amy's pubic area.
 

 Therefore, we hold that the trial court properly denied Defendant's motion to dismiss the sexual exploitation charges.
 
 See
 

 *101
 

 State v. Riffe
 
 ,
 
 191 N.C. App. 86
 
 , 96,
 
 661 S.E.2d 899
 
 , 906 (2008) (trial court did not err in denying defendant's motion to dismiss sexual exploitation of a minor charges where State presented substantial evidence to support those charges).
 

 Conclusion
 

 For the reasons stated above, we conclude that Defendant received a fair trial free from error.
 

 NO ERROR.
 

 Judges HUNTER, JR. and MURPHY concur.
 

 [1]
 

 A pseudonym is used throughout this opinion to protect the identity of the minor child.
 

 [2]
 

 N.C. Gen. Stat. § 14-27
 
 .7A(a) was recodified as
 
 N.C. Gen. Stat. § 14-27.25
 
 on 1 December 2015. Because the offense in the present case occurred prior to 1 December 2015, however,
 
 N.C. Gen. Stat. § 14-27
 
 .7A(a) remains applicable in this case.