An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-670

Filed 17 September 2025

Onslow County, Nos. 15 CRS 056796, 15 CRS 056797, 15 CRS 056798

STATE OF NORTH CAROLINA

v.

URIEL RUBIO TELLO

Appeal by defendant from judgments entered 18 July 2023 by Judge Jason C. Disbrow in Onslow County Superior Court. Heard in the Court of Appeals 26 August 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Heidi M. Williams, for the State.*

> *Tharrington Smith, L.L.P., by Melissa H. Hill and Lacy A. Hansen, for the defendant-appellant.*

TYSON, Judge.

Uriel Rubio Tello ("Defendant") appeals the judgments entered upon a jury's verdicts of guilty of three counts of first-degree sex offense with a child under the age of 13, three counts of indecent liberties with a child, and two counts of first degree rape of a child. Our review shows no error.

## I.    Background

Jenny Hernandez ("Jenny") met Defendant in 2005 when both were working at Defendant's brother's restaurant. Jenny was sixteen years old and Defendant was approximately twenty-six years old. Jenny, born in 1988, is the fifth of twelve children. Marle Hernandez, Jenny's sister, the fourth child was born in 1986. M.H., the ninth child, was born in 1995, and R.H., the eleventh child, was born in 2000.

Jenny became pregnant by and moved in with Defendant in 2006. Jenny testified she and Defendant continued to regularly visit her family. Jenny and Defendant's first child was born in 2006 and a second child was born in 2008.

Jenny's parents and nine of her siblings lived in a three-bedroom house in Hubert. Defendant, Jenny, and their two children would visit Jenny's parents' home and occasionally spend the night. M.H. alleged that during a visit in 2007 she was sitting next to Defendant on a couch bundled in a blanket when Defendant digitally fondled her breast and rubbed her vagina without penetrating. M.H. further alleged Defendant touched her breast and thighs during the summer of 2007.

Defendant, Jenny, and their two children moved into a two-bedroom mobile home in Hubert with her parents and six of her siblings, including M.H. and R.H. in September 2008. Jenny, Defendant, and their two children initially stayed in the living room until they moved into one of the two bedrooms.

R.H. testified she was playing video games in Defendant's, Jenny's, and their two children's bedroom one night. Defendant came into the bedroom and told R.H. to

turn off the video game because he wanted to go to bed. Defendant motioned for her to lie down next to him. After R.H. laid down next to Defendant, he unbuckled his pants. R.H. felt her pants being pulled down, and Defendant's penis touching her vagina. R.H. jumped up and out of the bed immediately upon feeling Defendant's penis. Defendant attempted to grab her arm to stop her, but she pulled away and went into her mother's room. R.H. did not tell her mother what had happened. A short time later, Defendant opened the door to R.H.'s mother's bedroom. R.H.'s mother asked if Defendant needed something, and Defendant stated he was checking to see if R.H. was in there.

R.H. further alleged Defendant was home alone with his two children and R.H. While the children were sleeping, Defendant asked her to come into the bedroom to watch television. R.H. went to the bedroom with Defendant. Defendant closed the door, put his hand on her inner thigh, and began unbuttoning his pants.

Defendant pulled down R.H.'s pants, removed his penis from his underwear, laid R.H. on the bed with her lower body off the bed and inserted his penis into her vagina. R.H. attempted to pull away and told Defendant his assault hurt. R.H. went to the bathroom crying, and after using the bathroom, observed blood in the toilet. R.H. gathered Defendant's two children and locked herself with them inside her parents' room until her mother returned to the residence.

Defendant invited R.H. to accompany him to the gas station to get some snacks. Instead of going to the gas station, Defendant took R.H. down a dirt road and parked

the vehicle. Defendant pulled R.H. along the vehicle's bench seat beside him, unbuttoned his pants, put his hands beneath her underwear, and placed his fingers inside of her vagina. R.H. started crying, told Defendant his actions hurt, and she tried to push him away. Defendant stopped and took R.H. to the gas station.

Defendant invited R.H. to accompany him to a Burger King restaurant, and R.H. agreed. Defendant did not drive to the Burger King but instead went down a different side road and parked the vehicle. Defendant told R.H. to lie down on the vehicle's bench seat, but she refused. Defendant "grabbed" R.H. and "made [her] lay down on the bench seat up on the front" of the vehicle. Defendant pulled down R.H's pants, unbuckled his belt, and removed his penis from his pants. R.H. told Defendant "No," but he got on top of her, told her it would not hurt, and inserted his penis into her vagina. R.H. testified Defendant stopped the rape because he received a call from Jenny asking where R.H. was.

R.H. further testified she was sleeping beside Jenny on the bed while Defendant was sleeping on the floor. Defendant reached up grabbed R.H.'s hand, put it on his penis, and began moving her hand up and down on his penis. Defendant stopped when he heard his child crying. R.H. left the room and went to sleep in the living room.

Jenny and Defendant broke up and separated in 2009. M.H. and R.H. were spending the night with their sister, Marle, in October 2015. M.H. told Marle and R.H. about Defendant's illicit actions with her. R.H. started crying and told Marle

- 4 -

and M.H. what had happened to her. Marle contacted the Onslow County Sheriff's Department.

Defendant was indicted for First-Degree Sexual Offense with a Child by an Adult and Indecent Liberties with a Child, involving M.H. (15-CRS-056796); Rape of a Child by an Adult, First-Degree Sexual Offense with a Child, and Indecent Liberties with a Child, involving R.H. (15-CRS-056797); and Rape of a Child by an Adult, First-Degree Sexual Offense with a Child, and Indecent Liberties with a Child, involving R.H. (15-CRS056798); on 12 April 2016.

Defendant's first trial began on 20 September 2017. The jury was unable to reach a unanimous verdict. Defendant moved for and was granted a mistrial on 25 September 2017. Defendant was retried on 10 July 2023 and the jury found him guilty of all charges on 18 July 2023. Defendant was sentenced as a prior record level I with 0 prior record level points to two consecutive active terms of 300 to 358 months' imprisonment. Defendant entered oral notice of appeal. The trial court made appellate entries on 18 July 2023.

The trial court recalled Defendant on 2 August 2023 and resentenced Defendant within the presumptive range to two consecutive active sentences of 200 to 249 months. Defendant was ordered to register as a sex offender for the remainder of his natural life. Defendant was not initially ordered to enroll in satellite-based monitoring. Defendant entered oral notice of appeal. The trial court made new appellate entries on 2 August 2023.

## II. Jurisdiction

Jurisdiction lies in the Court pursuant to N.C. Gen. Stat. §§ 7A-27(b)(4), 15A-1444(a) (2023).

## III. Issues

Defendant argues the trial court erred by: (1) denying his motion to dismiss for violating his right to a speedy trial; (2) failing to declare a mistrial *sua sponte* where the State's investigator improperly vouched for the credibility of a witness; and, (3) denying his motion to dismiss the charge of first-degree sexual offense against M.H.

## IV. Defendant's Speedy Trial Motion

Defendant argues the trial court erred by denying his motion to dismiss for the violation of his right to a speedy trial.

### A. Standard of Review

The denial of a defendant's motion to dismiss on asserted speedy trial grounds is a constitutional question of law subject to *de novo* review on appeal. *State v. Farook*, 381 N.C. 170, 178, 871 S.E.2d 737, 746 (2022) (citing *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290 (2008)).

### B. Analysis

The Constitution of the United States and the North Carolina Constitution provide in all criminal prosecutions; the accused has the right to a speedy and public trial. See U.S. Const. Amend. VI.; N.C. Cont. Art. I, § 18. The right to a speedy trial is reviewed differently than other Constitutional rights, as the "speedy-trial right is

'amorphous,' 'slippery,' and 'necessarily relative.' " *Vermont v. Brillon*, 556 U.S. 81, 89, 173 L.Ed.2d 231, 239 (2009) (quoting *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed.2d 101 (1972); *Beavers v. Haubert*, 198 U.S. 77, 87, 49 L.Ed. 950 (1905)). It is impossible to precisely determine when the right to a speedy trial has been denied, because there is "no fixed point when the accused is put to a choice of either exercising or waiving his right to a speedy trial[.]" *State v. McKoy*, 294 N.C. 134, 140, 240 S.E.2d 383, 388 (1978).

The Supreme Court of the United States has identified four factors to be assessed to determine whether a defendant has been deprived of his right to speedy trial. *Barker v. Wingo*, 407 U.S. 514, 530, 33 L.E.2d 101, 117 (1972). These four factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and, (4) whether the defendant has suffered prejudice resulting from the delay. *Id.* This four-factor analysis is also used when addressing claims asserted under the North Carolina Constitution. *State v. Flowers*, 347 N.C. 1, 27, 489 S.E.2d 391, 406 (1997) (citations omitted).

### 1. *Length of the Delay*

The length of delay a defendant faces is not *per se* determinative of whether his right to a speedy trial has been deprived. *State v. Webster*, 337 N.C. 674, 678, 447 S.E.2d 349, 351 (1994). A delay of over one year "does not necessarily indicate a statistical probability of prejudice[;]" however, it is a long enough delay to trigger a *Barker* analysis. *Id.* Here, Defendant was arrested in November 2015 and was

indicted 12 April 2016 for multiple crimes with multiple victims. The first trial began on 17 September 2017, and it ended in a mistrial due to a hung jury on 25 September 2017. Defendant was re-calendared for a second trial on 23 July 2018; however, Defendant's counsel moved to continue. The nation and courts suffered through the effects of the COVID-19 pandemic during 2020 and into 2021. The case was ultimately tried for a second time beginning on 10 July 2023. Defendant was arrested almost eight years before receiving his sentence, causing the length of the delay to sufficiently trigger an examination of the *Barker* factors. *Barker*, 407 U.S. at 530, 33 L.E.2d at 117.

### 2. *Reason for the Delay*

A speedy trial claim remedies prejudicial delays that were "purposeful or oppressive," and which the "prosecution could have avoided by reasonable effort." *State v. Johnson*, 275 N.C. 264, 273, 167 S.E.2d 274, 280 (1969). In order to claim a violation of the right to a speedy trial, "a defendant must demonstrate the delay stemmed from either negligence or willfulness on the part of the State." *State v. Carvalho*, 243 N.C. App. 394, 401, 777 S.E.2d 78, 84 (2015) *cert. denied*, 583 U.S. 815, 199 L.Ed.2d 19 (2017). Neutral reasons for delay such as "overcrowded courts" are weighed less heavily against the State, but it must still be considered when determining the reason for the delay. *Barker*, 407 U.S. at 531, 33 L.Ed.2d at 117.

Here, both Defendant and the State caused delays, and the delays attributable to the State are not weighed heavily against the State. Defendant was indicted on 12

April 2016 and was tried for the first time in September 2017. The case was then re-calendared for less than a year later on 23 July 2018, after the first trial ended in a mistrial. This period of time should be considered neutral, as no record or findings support this delay was due to prosecutorial negligence or willfulness. *Webster*, 337 N.C. at 679, 447 S.E.2d at 351. Given the process by which cases are calendared, the time passing from immediately preceding Defendant's first trial and the rescheduling of the trial are neutral to this inquiry. *Id.*

The second period of delay is more attributable to Defendant. After the trial court set the case to be retried on 23 July 2018, Defendant's counsel moved to continue the matter. After Defendant's counsel's motion, the case was then set for January 2020. Delays caused by Defendant's counsel must be assigned to Defendant, so the delay resulting from the motion to continue is attributable to Defendant. *Brillon*, 556 U.S. at 94, 173 L.Ed.2d at 242.

Due to the effects the COVID-19 pandemic, all courts in Onslow County and North Carolina were closed, and no jury trials occurred. Due to this closing, all delays due to this universal stoppage and closure are neutral and cannot be weighed against the State.

After jury trials resumed, the delay that occurred until the second trial is attributable to both the State and Defendant. A new assistant district attorney was assigned to Defendant's case, who contacted Defendant's attorney to determine when to schedule the new trial. Defense counsel indicated his unavailability to try

Defendant's case during the remainder of 2021 calendar year due to other cases he was handling at the time. Further, from November 2021 to December 2022, the assistant district attorney was negotiating other major felony cases with Defendant's attorney.

The common practice in Onslow County provides separate serious felony cases where the defendants are being represented by the same counsel will not be calendared at the same time. The scheduling conflicts were largely attributed to the backlog of the court post-COVID-19 pandemic, as well as Defendant's counsel and local policy.

The Supreme Court of North Carolina has repeatedly held "overcrowded dockets and limited court sessions are valid reasons excusing delay." *State v. Farmer*, 376 N.C. 407, 416, 852 S.E.2d 334, 342 (2020) (citations omitted). Unlike in *Farmer*, where the delay was calling other criminal cases for trial prior to the defendant's trial, our Supreme Court held the delay there was "slightly, but firmly, weigh[ed] in the favor of defendant." *Id.*

The delay of October 2022 to mid-January 2023 is attributable to the State, as the Assistant District Attorney assigned the case was unavailable due to her maternity leave. While this delay is attributable to the State, it should not weigh heavily, as maternity leave cannot be considered a negligent or willful delay by the State. *Farook*, 381 N.C. at 188, 871 S.E.2d at 752. Upon her return to work, ongoing communications between the assistant district attorney and Defendant's attorney

occurred to schedule the second trial. On 22 May 2023, the case was scheduled for trial on 10 July 2023. This period of delay is partially attributable to scheduling conflicts of Defendant's counsel. It cannot be said the State willfully or negligently deprived Defendant of his speedy trial right. *Carvalho*, 243 N.C. App. at 401, 777 S.E.2d at 84.

### 3. *Defendant's Assertion of the Speedy Trial Right*

A defendant's assertion of his right to speedy trial is given strong evidentiary weight when determining if deprivation of his right occurred. His own "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *State v. Armistead*, 256 N.C. App 233, 239, 807 S.E.2d 664, 669 (2017) (quoting *Barker*, 407 U.S. at 531-32, 33 L.Ed.2d at 117). Defendant did not move for a speedy trial right violation until 6 July 2023, only four days before his second trial started. Defendant also acquiesced to the delay, as Defendant's attorney had reached out to the State on 14 June 2023 to suggest yet another continuance. This assertion of the right by Defendant factor four days prior to trial weighs heavily against Defendant. *Id.*

### 4. *Prejudice as a Result of Delay*

"Courts will not presume that a delay in prosecution has prejudiced the accused. The defendant has the burden of proving the fourth factor." *State v. Hughes*, 54 N.C. App 117, 120, 282 S.E.2d 504, 507 (1981). The right to a speedy trial is meant to protect individual interests in: "(1) avoiding prolonged imprisonment; (2) reducing

anxiety of the accused; and (3) created the opportunity for the accused to assert and exercise their presumption of innocence." *State v. Ambriz*, 286 N.C. App. 273, 303, 880 S.E.2d 449, 473 (2022). The most important aspect of the speedy trial right is the ability of a defendant to secure witnesses and to prepare his case to defend his presumed innocence. *Id.*

Defendant remained on pre-trial release since 27 July 2016 and was able to run a functioning car repair business from his home. Defendant asserts he was prejudiced due to the delays, as his wife at the time of the first trial, Marta, and her sister, Gloria, delivered favorable character witness testimonies during his first trial. Since the first trial, Marta divorced Defendant, and Defendant claims because of their separation, he could no longer secure her and Gloria's testimony.

While Defendant claims this loss of testimony was prejudicial to his case, he made no showing he had attempted to contact either woman or served subpoenas on these witnesses, nor did he request material witness orders. In order to prove prejudice based on purported lost testimony, a "defendant must show that the resulting lost . . . testimony was significant and would have been beneficial to his defense." *State v. Marlow*, 310 N.C. 507, 521, 313 S.E.2d 532, 541 (1984).

Defendant failed to show these testimonies were unavailable to him at the time of the trial, or he had made any effort to secure their testimony, nor did he provide any proffer of why this testimony would have been beneficial to his defense to show prejudice.

We have reviewed and considered each of the *Barker* factors. *Barker*, 407 U.S. at 530, 33 L.E.2d at 115-17. Defendant failed to carry his burden to demonstrate prejudice from a speedy trial violation. We affirm the trial court's ruling denying Defendant's motion to dismiss. The trial court did not err after it determined Defendant's State or Federal Constitutional right to a speedy trial was not violated. Defendant's argument is overruled.

## V.  Failure to Declare a *Sua Sponte* Mistrial

Defendant argues the trial court abused its discretion by failing to declare a mistrial *sua sponte* following two statements made by the State's lead investigator before the jury. Detective John Getty, the State's lead investigator, testified he had located Defendant and when he attempted to interview him, "he did not want to interview with me. He asked to speak with an attorney."

Defendant's counsel objected and immediately moved to strike. The trial court allowed the motion to strike, and the jury was specifically instructed to disregard this testimony.

During cross examination, Defendant's counsel asserted due to the delays in reporting the allegations, he had neither the opportunity to investigate the crime scene, nor to interview potential witnesses:

> [Defendant's counsel]: and the—now, a law enforcement officer, particularly someone with your skill and background, crime scene investigation and interview of potential witnesses that may help you in deciding what happened, you were unable to do that in this case because

of the time delay; is that correct?

[Detective Getty]: That's correct.

[Defendant's counsel]: It just wasn't available to you?

[Detective Getty]: Yes, sir.

On redirect, the State sought to rehabilitate Detective Getty:

> [The State]: [Defendant's counsel] mentioned that—he mentioned the delay in— you know, the time delay from when these offenses happened versus when they were reported. In your experience is that unusual?
>
> [Detective Getty]: No. Like I said, these people that get violated, they are not thinking like they're going to an amusement park; those memories will always stick in your head. But also violent memories are horrific and people want to forget them. They don't want to bring them up because it is an ugly place you have to go to you (sic). Especially when you think about the fact that what age these children were. They weren't 15 and 19; they were younger than that and they are expressing themselves to the fact what an adult did to them. And a lot of times these young women aren't coming out and saying, "Oh yeah. This is what happened." They are embarrassed by it. They feel dirty; they feel filthy and it's not even their fault. And the fact that they were violated from this. You know how hard that is to actually tell, especially someone in law enforcement, someone who fights for them? Because we are it; we are the front line that fights for these victims and take care of them. And I had all of this experience, you know. I mean—and I understand what they go through because I had over 1100 cases that I conducted over my 12 years as a special victims detective. And some were made up. That's why when you see 1100 I only put 700 people when it comes to convictions. Not everybody always tells the story, you know. But these two women are telling 100 percent in my opinion—

Defendant's counsel again objected and moved to strike. The trial court

allowed the motion to strike and the jury was again specifically instructed to disregard Detective Getty's objected-to testimony.

## A. Standard of Review

The "determination of whether [a] defendant's case has been irreparably and substantially prejudiced" a mistrial is necessary generally remains in the sound discretion of the trial court. *State v. McNeill*, 349 N.C. 634, 646, 509 S.E.2d 415, 422-23 (1998) (quoting *State v. King*, 343 N.C. 29, 44, 486 S.E.2d 232, 242 (1996)). Generally, "the decision of whether to grant a mistrial rests within the discretion of the trial judge." *State v. Dial*, 122 N.C. App 298, 308, 470 S.E.2d 84, 90 (1996). A trial court's failure to *sua sponte* declare a mistrial is to be reviewed for abuse of discretion. *See State v. Shore*, 258 N.C. App. 660, 665, 814 S.E.2d 464, 468 (2018).

## B. Analysis

"Upon motion of a party or upon his own motion, a judge may declare a mistrial if . . . [i]t is impossible for the trial to proceed in conformity with law[.]" N.C. Gen. Stat. § 15A-1063(1) (2023). While a trial court may at any time declare a mistrial *sua sponte* by statute, our Supreme Court has noted a mistrial "is a drastic remedy, warranted only for such serious improprieties as would make it impossible to attain a fair and impartial verdict." *State v. Taylor*, 362 N.C. 514, 538, 669 S.E.2d 239, 261 (2008).

In *Dial*, the trial court did not abuse its discretion by not declaring a mistrial after improper testimony from a witness was immediately interrupted and the trial

court instructed the jury to disregard the improper statement. *Dial*, 122 N.C. App. at 309, 470 S.E.2d at 91.

Defendant contends Detective Getty, the State's lead investigator, repeatedly vouched for the credibility of M.H. and R.H., testified they were telling the truth, and told the jury Defendant had declined to be interviewed and had requested an attorney. Defendant first claims Detective Getty's statements about the purported truthfulness of victims were improper. He argues, and we agree, no witnesses should vouch for the credibility of witnesses, as that determination rests within the province of the jury. *State v. Giddens*, 199 N.C. App. 115, 121, 681 S.E.2d 504, 508 (2009). *See also State v. Kim*, 318 N.C. 614, 621, 350 S.E.2d 347, 351 (1986) (the jury is the only proper entity to determine the truth in a trial.)

While the comments made by Detective Getty asserting the "two women were telling one hundred percent" the truth were improper, they were met immediately with a sustained objection and curative instructions given to the jury to disregard the statement. The trial court's sustaining of the objection, taking immediate measures to address inappropriate conduct, and instructing the jury to disregard obviated, or at least tempered, the need to declare a mistrial.

Defendant also claims Detective Getty's statements regarding the exercise of Defendant's Constitutional rights to counsel were improper and argues mistrial was necessary. Defendant argues the statement Defendant had "asked to speak with an attorney" and "did not want to interview with" the investigator infringed upon his

constitutional right to counsel and his right to remain silent.

While "the State may not introduce evidence that a defendant exercised his [F]ifth [A]mendment right to remain silent[,]" the investigator's statements regarding this matter do not warrant a mistrial. *State v. Moore*, 366 N.C. 100, 104, 736 S.E.2d 168, 172 (2012) (quoting *State v. Ladd*, 308 N.C. 272, 283, 302 S.E.2d 164, 171 (1983)).

While Detective Getty's statements were improper and we admonish allowing them coming before the jury, defendant's counsel immediately objected and moved to strike them from the record, to which the court sustained and agreed to give curative instructions to the jury. Both the statements regarding the veracity of the prosecuting witnesses and Defendant's invocation of his constitutional rights were immediately met with objections and motions to strike, which were granted by the court. Further, the court immediately instructed the jury to disregard these statements, telling them that they may not consider the statements as evidence. Because the statements were met with immediate interruption, and the trial court quickly corrected the statements by giving curative instruction to the jury, the trial court did not abuse its discretion when it did choose to not *sua sponte* declare a mistrial. *Id.*

## VI. Motion to Dismiss

Defendant argues the trial court erred by denying his motion to dismiss the charge of first degree statutory sexual offense against M.H. due to insufficient

evidence.

## A. Standard of Review

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). In determining whether sufficient evidence supports a criminal conviction, the court considers whether there is substantial evidence of each element of the offense charged. *State v. Frogge*, 351 N.C. 576, 584, 528 S.E.2d 893, 899 (2000). What constitutes "substantial evidence is a question of law." *Id.*

In ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State. *State v. McKinney*, 288 N.C. 113, 118, 215 S.E.2d 578, 581-82 (1975). "[T]he trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 456 (2000) (citing *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 652 (1982)).

"This Court reviews [a] trial court's denial of a motion to dismiss de novo." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted).

## B. Analysis

A defendant is guilty of a first-degree statutory sexual offense "if the person engages in a sexual act with a victim who is a child under the age of 13 years and the

defendant is at least 12 years old and is at least four years older than the victim." N.C. Gen. Stat § 14-27.29 (2023). A "sexual act" is defined as "the penetration, however slight, by any object into the genital or anal opening of another person's body." N.C. Gen. Stat § 14-27.20(4) (2023). Defendant contends the State failed to produce substantial evidence he had committed a sexual act against M.H.

Defendant claims no evidence tended to show any of the outlined sexual acts listed were ever committed, as M.H. supposedly never described or suggested penetration of any sort. We disagree. M.H. testified Defendant had "slid his hands down" her waistband and "st[u]ck[ ] his hand in my underwear," then "started rubbing my vagina." M.H. highlighted both the clitoris and the labia majora on the diagram M.H. was given to shade where Defendant had allegedly touched her.

M.H.'s assertion she was touched on her clitoris and labia majora is sufficient evidence tending to show Defendant committed a sexual act. This Court has stated "a victim's testimony of being touched in between the labia is sufficient evidence to survive a motion to dismiss." *State v. Burns*, 278 N.C. App. 718, 722, 862 S.E.2d 431, 435 (2021).

In *State v. Corbett*, 364 N.C. App 93, 98, 824 S.E.2d 875, 879 (2019), this Court ruled the victim's testimony asserting the defendant had touched her "between [her] labia" was sufficient to support that the defendant penetrated the victim's labia. *Id.* Substantial evidence trended to show penetration of M.H.'s labia by Defendant. In addition to M.H.'s testimony and the highlighted diagram, Jennifer Benton, a

qualified expert in pediatrics and child medical evaluations, testified M.H. highlighted "the portion that includes both the labia majora and the clitoris.," She also noted "the clitoris is inside of the genital opening" and "all of these structures are inside of the labia majora." This evidence tends to show Defendant penetrated M.H.'s labia and supports the charge and conviction of First-Degree Sexual Offense against M.H. Defendant's argument is overruled.

## VII.  Conclusion

The trial court properly denied Defendant's motion for a speedy trial. The trial court did not err by failing to declare a mistrial *sua sponte* following statements made by Detective Getty implicating Defendant's right to remain silent and purportedly bolstering the allegations against Defendant. The trial court sustained Defendant's objections, agreed to strike, and immediately provided curative instructions to the jury.

The State presented sufficient evidence to overcome Defendant's motion to dismiss the first-degree statutory sexual offense charge against M.H. Defendant received a fair trial, free from prejudicial issues he preserved and argued. Our review discerns no error in the jury's verdicts or in the judgments entered thereon. *It is so ordered.*

NO ERROR.

Judges HAMPSON and FLOOD concur.

Report per Rule 30(e).