IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-592

Filed 17 June 2026

Lincoln County, No. 23CR270704-540

STATE OF NORTH CAROLINA

v.

PATRICK JUNIOR HAVENS

Appeal by defendant from judgments entered 22 August 2024 by Judge Sarah E. Kirby-Turner in Lincoln County Superior Court. Heard in the Court of Appeals 25 March 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Catherine R. Laney, for the State.*
>
> *Cooley Law Office, by Craig M. Cooley, for defendant-appellant.*

ZACHARY, Judge.

Defendant Patrick Junior Havens appeals from the trial court's judgments entered upon a jury's verdicts finding him guilty of secret peeping, second-degree sexual exploitation of a minor, and third-degree sexual exploitation of a minor. On appeal, Defendant argues that the court erred by denying his motion to dismiss the charges. After careful review, we discern no error.

## I.    Background

Defendant's case came on for jury trial on 19 August 2024. The evidence tended to show the following:

In June 2022, S.H.[1] moved in with her grandparents, Defendant and his wife. On 26 March 2023, S.H., who was 13 years old at the time, wanted to take a shower in her grandparents' bathroom, which she perceived as nicer than her own. She asked Defendant for permission to do so and he responded: "Yeah, let me go get something out of my room real quick." He also told S.H. that he needed to give something to her grandmother, who was on the front porch. Then, Defendant went to the garage; S.H. did not hear him go to the front porch. Meanwhile, S.H. returned to her bedroom to gather items for her shower.

When S.H. entered Defendant's bathroom to take a shower, she saw what appeared to be two charging blocks plugged into outlets "in the middle of the mirror." In reality, though, these charging blocks were actually cameras that "look like . . . regular phone charging block[s] that you would plug into a wall." S.H. recognized these to be cameras because her sister, B.H., had stolen money from Defendant "years ago," and Defendant "showed [the sisters] these little charging blocks" to reveal how he had discovered her theft. S.H. also realized that the charging block cameras were recording because she noticed that they were "lighting up."

S.H. removed the charging block cameras before showering; she later photographed them and called B.H. to tell her of the incident. After S.H. showered and was in her bedroom "waiting for the cops," Defendant asked S.H. where the

---

[1] We employ initials to protect the identities of the juveniles. *See* N.C.R. App. P. 42(b).

charging blocks were. S.H. told him that she did not know and offered him a regular charging block. Defendant responded: "No. That's a different [charging block]. I need the ones that were in the bathroom." When S.H. repeated that she did not know where the charging blocks were, Defendant told her: "We're gonna have to tear the whole room apart." After some delay, S.H. gave the charging block cameras to Defendant shortly before law enforcement arrived.

Barry Holt, a sergeant with the Lincoln County Sheriff's Office, responded to the call, and S.H. met him in the front yard. S.H. told him that "she had found cameras in her bathroom that she felt like her grandpa had put there while she was going to take a shower." Sergeant Holt also spoke to Defendant, who initially denied that there were any cameras in the house. Defendant then entered the house and returned with a regular charging block, which he showed to Sergeant Holt; S.H. confirmed that it was not one of the charging block cameras. She showed Sergeant Holt pictures of the charging block cameras and Sergeant Holt secured the house while waiting for a search warrant to be executed. Defendant eventually admitted to Sergeant Holt that he had more than ten cameras throughout the house.

Detective Michael Lookadoo arrived and executed the search warrant. Detective Lookadoo located one of the charging block cameras inside the top drawer of Defendant's nightstand, along with stickers to disguise the charging block cameras as regular chargers. In a desk in the garage, Detective Lookadoo found two more charging block cameras. Detective Lookadoo also seized Defendant's cell phone as

evidence.

The charging block cameras discovered in the garage were admitted into evidence at trial as State's Exhibit 17 and published to the jury. Defendant's cell phone was admitted as State's Exhibit 10.

Detective Lookadoo analyzed the data from Defendant's cell phone and the charging block cameras. Each of the charging block cameras contained approximately 100,000 images captured from Defendant's bathroom and another bathroom in the house. There were also videos of S.H. "partially undressed in different stages, showing genitalia and breast." Defendant had taken videos with his cell phone of the charging block camera footage "of [S.H.] undressed, [showing] breasts and genitalia." Defendant told Detective Lookadoo that he watched the block "camera recordings to see if 'they' were stealing things." The photographs and videos from the charging block cameras and Defendant's cell phone showing S.H. in various states of undress were admitted into evidence at trial and published to the jury.

At the close of the State's evidence, defense counsel made a motion to dismiss the charges and renewed his motion at the close of all evidence; the trial court denied the motion both times.

On 22 August 2024, the jury returned verdicts finding Defendant guilty of secret peeping, second-degree sexual exploitation of a minor, and third-degree sexual exploitation of a minor. That same day, the trial court entered judgments against Defendant. The court sentenced Defendant to 25 to 90 months' imprisonment in the

custody of the North Carolina Department of Adult Correction for his conviction for second-degree sexual exploitation of a minor. The court then consolidated Defendant's convictions for secret peeping and third-degree sexual exploitation of a minor and sentenced Defendant to a consecutive term of 6 to 17 months' imprisonment.

Defendant gave oral notice of appeal.

## II. Discussion

Defendant argues that the trial court erred by denying his motion to dismiss the charges. We disagree.

### A. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss de novo." *State v. Walker*, 293 N.C. App. 316, 319, 900 S.E.2d 145, 148 (2024) (cleaned up). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Southerland*, 266 N.C. App. 217, 219, 832 S.E.2d 168, 170 (2019) (cleaned up).

"The test of the sufficiency of the evidence in a criminal case is whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Ligon*, 206 N.C. App. 458, 468, 697 S.E.2d 481, 488 (2010) (cleaned up).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Evidence must be viewed in the light most

favorable to the State with every reasonable inference drawn in the State's favor." *State v. Corbett*, 264 N.C. App. 93, 97, 824 S.E.2d 875, 878 (cleaned up), *appeal dismissed*, 373 N.C. 176, 833 S.E.2d 809 (2019).

"It is immaterial whether the substantial evidence is circumstantial or direct, or both." *State v. Shelton*, 293 N.C. App. 154, 157, 899 S.E.2d 894, 897 (2024) (citation omitted). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. The evidence need only give rise to a reasonable inference of guilt in order for it to be properly submitted to the jury." *Id.* (cleaned up). "Cases involving sexual exploitation are not exceptions to these principles." *Id.*

"When considering a motion to dismiss for insufficiency of evidence, the court is concerned only with the legal sufficiency of the evidence to support a verdict, not its weight, which is a matter for the jury." *Walker*, 293 N.C. App. at 319, 900 S.E.2d at 148 (citation omitted).

**B. Secret Peeping**

A person commits the crime of felony secret peeping when he, *inter alia,* "for the purpose of arousing or gratifying the sexual desire of any person, secretly or surreptitiously uses or installs in a room any device that can be used to create a photographic image with the intent to capture the image of another without their consent." N.C. Gen. Stat. § 14-202(f) (2023); *see also id.* § 14-202(a1)–(d), (e1), (g)–(h).

On appeal, Defendant argues that the State failed to present substantial

evidence: (1) that he placed the two charging block cameras in the bathroom "with the intention of invading [S.H.]'s privacy," and (2) that he "acted for the purpose of arousing or gratifying his sexual desire." Defendant characterizes his actions as "immoral" but not "criminal."

    *1. "Secretly or Surreptitiously"*

Our Supreme Court has concluded that "the word 'secretly' as used in [§] 14-202 conveys the definite idea of spying upon another with the intention of invading her privacy." *In re Banks*, 295 N.C. 236, 242, 244 S.E.2d 386, 390 (1978). "Intent is an attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct evidence[;] it must ordinarily be proven by circumstantial evidence, i.e., by facts and circumstances from which it may be inferred." *State v. Bauguss*, 265 N.C. App. 33, 38, 827 S.E.2d 127, 131 (2019) (cleaned up).

In the instant case, Defendant does not argue that his use of the cameras was not surreptitious or that he acted with S.H.'s consent. Instead, Defendant contends that the trial court erred in denying his motion to dismiss because the State "presented no evidence that when [he] placed the two block charger cameras . . . , he did so with the intention of invading S.H.'s privacy," citing *Banks*. Defendant's reliance on *Banks* is misplaced.

In *Banks*, our Supreme Court was interpreting § 14-202 as it existed at that time; "giving the language of the statute its meaning," the Court construed it to prohibit "the wrongful spying into a room upon a female with the intent of violating

the female's legitimate expectation of privacy." *Banks*, 295 N.C. at 242, 244 S.E.2d at 390. By contrast, N.C. Gen. Stat. § 14-202(f) (2023) protects both men and women and accounts for spying via technological advances not yet made in 1978, when *Banks* was published. While the statute, as a whole, is certainly still intended to protect individuals from wrongful spying and similar intrusions upon privacy, subsection (f) does not, as an essential element, require the State to prove that Defendant intended to invade the victim's reasonable expectation of privacy. Therefore, as regards the challenged element of "secretly or surreptitiously" in the case before us, the State was simply required to prove that Defendant secretly or surreptitiously used or installed the charging block cameras in a room. *See id.* § 14-202(b)(3), (f).

There is ample evidence that between 1 October 2022 and 26 March 2023, Defendant "secretly or surreptitiously" used the charging block cameras—devices that can be used to create a "[p]hotographic image," *see id.* § 14-202(b)(1)—to film S.H. "with the intent to capture the image of [S.H.] without [her] consent." *Id.* § 14-202(f). Defendant installed charging block cameras in more than one bathroom, and of the approximately 100,000 images and multiple videos on each camera, Defendant selectively recorded on his cell phone only those videos showing S.H. in various degrees of nudity. Thus, the State presented sufficient evidence for a jury to determine that Defendant "secretly or surreptitiously" used or installed the charging block cameras in the bathrooms "with the intent to capture the image of [S.H.] without [her] consent." *Id.*

- 8 -

*2. For the Purpose of Arousing or Gratifying Sexual Desire*

"Whether [the] defendant's actions were for the purpose of arousing or gratifying sexual desire[ ] may be inferred from the evidence of the defendant's actions." *State v. Creech*, 128 N.C. App. 592, 599, 495 S.E.2d 752, 756 (cleaned up), *disc. review denied*, 348 N.C. 285, 501 S.E.2d 921 (1998).

In the present case, Defendant maintains that the State failed to present substantial evidence that he acted "for the purpose of arousing or gratifying his sexual desire." However, Detective Lookadoo testified at trial that he discovered on the charging block cameras numerous "thumbnails" and "screenshots" taken of videos of S.H. "partially undressed in different stages, showing genitalia and breast." He further testified that the only videos on Defendant's cell phone were videos of S.H. in various states of undress captured from the charging block cameras. Therefore, the State presented substantial evidence from which the jury could reasonably infer that Defendant acted "for the purpose of arousing or gratifying . . . sexual desire." N.C. Gen. Stat. § 14-202(f); *see also Corbett*, 264 N.C. App. at 97, 824 S.E.2d at 878.

Viewed in the light most favorable to the State, there was sufficient evidence from which the jury could find that Defendant committed the crime of secret peeping under N.C. Gen. Stat. § 14-202(f). Accordingly, the trial court did not err in denying Defendant's motion to dismiss this charge.

**C. Second- and Third-Degree Sexual Exploitation of a Minor**

Defendant next contends, as regards the crimes of second- and third-degree

sexual exploitation of a minor, that "the State had to present substantial evidence that [he] took . . . photographs and videos to stimulate a sexual desire he had for [S.H.]." According to Defendant, the State "presented little evidence – let alone substantial evidence, to prove any sort of intent element."

### 1. Second-Degree Sexual Exploitation

"Second-degree sexual exploitation of a minor criminalizes, among other things, the act of photographing or duplicating material that contains a visual representation of a minor engaged in sexual activity." *Corbett*, 264 N.C. App. at 99, 824 S.E.2d at 880 (cleaned up); *see* N.C. Gen. Stat. § 14-190.17(a). For charges of second- and third-degree sexual exploitation, our General Statutes define "material" as "[p]ictures, drawings, video recordings, films or other visual or physical depictions or representations." N.C. Gen. Stat. § 14-190.13(2).

The term "sexual activity"[2] is also statutorily defined: "The [statutory] definition of sexual activity for purposes of . . . second-degree sexual exploitation of a minor includes the lascivious exhibition of the genitals or pubic area." *Corbett*, 264 N.C. App. at 100, 824 S.E.2d at 880 (cleaned up); *see* N.C. Gen. Stat. § 14-190.13(5)(g). "Our appellate courts have defined the term 'lascivious' as 'tending to arouse sexual desire.'" *Corbett*, 264 N.C. App. at 100, 824 S.E.2d at 880 (citation omitted).

---

[2] Subsection 14-190.13(5) delineates multiple kinds of "sexual activity"; in the present case, the jury charge for both second- and third-degree sexual exploitation was based on the following type of "sexual activity": "the lascivious exhibition of the genitals or pubic area of any person." *See* N.C. Gen. Stat. § 14-190.13(5)(g).

In *Corbett*, this Court determined that a photograph of the minor-victim, which depicted her "standing naked in her father's bedroom except for her socks," crossing her arms "in front of her body" and "attempting to cover her pubic area with her hands," was sufficient evidence from which a jury could find that the defendant committed sexual exploitation, due to the lascivious nature of the photograph. *Id.*

Here, Detective Lookadoo executed a search warrant at Defendant's house, during which he seized the charging block cameras and Defendant's cell phone. Analysis of the data from the charging block cameras revealed videos of S.H. "partially undressed in different stages, showing genitalia and breast" as well as screenshots of images from the videos. The data from Defendant's cell phone contained videos recorded from the charging block cameras videos "of [S.H.] undressed, [showing] breasts and genitalia." Photographs and videos showing S.H. in various states of undress which were obtained from the charging block cameras and Defendant's cell phone were admitted into evidence at trial and published to the jury.

Viewed in the light most favorable to the State, there was sufficient evidence from which the jury could reasonably find that Defendant "photograph[ed] or duplicat[ed] material that contain[ed] a visual representation of a minor engaged in sexual activity"—specifically, a "lascivious exhibition of the genitals or pubic area" of his minor granddaughter, S.H. *Id.* at 99, 100, 824 S.E.2d at 880, 880 (cleaned up). Thus, the trial court did not err in denying Defendant's motion to dismiss the charge of second-degree sexual exploitation of a minor.

2. *Third-Degree Sexual Exploitation*

"A person commits the offense of third[-]degree sexual exploitation of a minor if, knowing the character or content of the material, he possesses material that contains a visual representation of a minor engaging in sexual activity." *State v. Riffe*, 191 N.C. App. 86, 89, 661 S.E.2d 899, 902 (2008) (citation omitted); *see* N.C. Gen. Stat. § 14-190.17A(a). "The elements of the offense are: (1) knowledge of the character or content of the material, and (2) possession of material that contains a visual representation of a minor engaging in sexual activity." *Riffe*, 191 N.C. App. at 89, 661 S.E.2d at 902 (cleaned up).

As our Supreme Court has explained, "the offense of third-degree sexual exploitation of a minor prohibits the mere possession of child pornography." *State v. Fletcher*, 370 N.C. 313, 320, 807 S.E.2d 528, 534 (2017). "A defendant is in possession of child pornography when he or she has the power and intent to control the disposition of the images." *Riffe*, 191 N.C. App. at 92, 661 S.E.2d at 904 (cleaned up). "Sufficient evidence of possession has been found where each image had been opened and saved on a defendant's hard drive." *Id.* (citation omitted).

In the instant case, Detective Lookadoo testified that there were "thumbnails" and "screenshots" taken of videos of S.H. "partially undressed in different stages, showing genitalia and breast" on the charging block cameras. He further testified that the only videos recorded on Defendant's cell phone were videos of S.H. in various states of undress that had been purposefully taken from the charging block cameras'

videos. Defendant's actions in taking screenshots of images in the videos and purposefully recording additional videos of S.H. on his cell phone evince his "aware[ness] of the pornography's presence" and his "power and intent to control the material's disposition." *State v. Bowman*, 291 N.C. App. 359, 366, 895 S.E.2d 892, 897 (2023).

Accordingly, the State presented sufficient evidence that Defendant, while "knowing the character or content of the material," possessed "material that contain[ed] a visual representation of [S.H.] engaging in sexual activity." *Riffe*, 191 N.C. App. at 89, 661 S.E.2d at 902 (citation omitted). The trial court did not err in denying Defendant's motion to dismiss this charge.

## III. Conclusion

For the foregoing reasons, we conclude that Defendant received a fair trial, free from error.

NO ERROR.

Judges FLOOD and STADING concur.